**HOLY SPIRIT ASSOCIATION FOR THE UNIFICATION OF WORLD CHRISTIANITY, Plaintiff,**

v.

**TOWN OF NEW CASTLE et al., Defendants.**

No. 79 Civ. 6101 (HFW).

United States District Court, S. D. New York.

Nov. 30, 1979.

---

Levy, Gutman, Goldberg & Kaplan, New York City, for plaintiff; Jeremiah S. Gutman, New York City, of counsel.

Anderson, Russell, Kill & Olick, P. C., New York City, for defendants; Arthur S. Olick, New York City, of counsel.

## OPINION

WERKER, District Judge.

This civil rights action brought pursuant to 42 U.S.C. § 1983 was commenced by plaintiff Holy Spirit Association for the Unification of World Christianity ("Unification Church") against the Town of New Castle ("New Castle"), the Zoning Board of Appeals of the Town of New Castle (the "Zoning Board"), Chairman of the Zoning Board, four of its members and the Building Inspector of New Castle.[1]

Plaintiff has moved by order to show cause for a preliminary injunction compelling the Zoning Board to issue a special use permit for the operation of a "religious retreat" on a 98 acre tract of land purchased by Unification Church in a residential zone. On November 21, 1979 a hearing on the application for a preliminary injunction was held before this court, and after hearing oral argument from both sides, this

1. Defendant Gabriel Rosenfeld is the Chairman of the Board. Defendants Bruce Gilchrist, David Durst, Carl Sloan and Chris von Seggern are members of the Board. George H. Fuhr-man is the Building Inspector. All of these defendants are sued both individually and in their official capacities.

court denied plaintiff's motion. This opinion amplifies the reasons given at the hearing.

The principal facts are not in dispute and can be briefly stated as follows. In April 1979, plaintiff Unification Church acquired a tract of land from the Sisters of the Cenacle at a foreclosure sale in New Castle. The land was located in a residential zone, and under the applicable New Castle zoning ordinance, adopted in 1971, institutional uses are permitted in residential zones only by special permit.

On July 7, 1979 plaintiff filed an application with the Zoning Board for permission to use its property as a "religious retreat center . . . to provide an environment in which a person might improve and experience . . . emotional and intellectual relationship with God . . . through prayer and a series of lectures setting forth the theology of the Church."

The Zoning Board referred the application to the Planning Board for site plan approval which was granted on September 13, 1979. The Board determined that a draft environmental impact statement ("DEIS") was required under the State Environmental Quality Review Act ("SEQR"). The Board scheduled a series of regular and special meetings to consider the merits of plaintiff's application. Hearings were held on September 26, October 10, October 31 and November 19, 1979. The hearings are scheduled to continue. Plaintiff has not yet filed its DEIS which it has agreed to furnish on or before December 3, 1979, the date of the next scheduled special board meeting called to consider plaintiff's application.

On November 14, plaintiff filed the within action in this court seeking (a) to declare the New Castle zoning ordinance unconstitutional on its face and as applied; (b) injunctive relief directing defendants to issue a special use permit; (c) demanding damages in excess of $1,000,000 against the Town of New Castle, its Building Inspector and the individual members of its Zoning Board; and (d) enjoining the Zoning Board from inquiring into the nature, theology, affiliations, finances, personnel, structure or other private aspects of the Unification Church. Coincident with the filing of the complaint, plaintiff moved for the injunctive relief which is the subject matter of this opinion.

■ Plaintiff's moving papers seek mandatory injunctive relief which is not appropriate at this stage of the proceedings. The purpose of a preliminary injunction is to preserve the status quo between the parties pending a full hearing on the merits. *Triebwasser & Katz v. American Tel. & Tel. Co.,* 535 F.2d 1356, 1360 (2d Cir. 1976). Preliminary injunctive relief is improper where it would give the plaintiff substantially all the ultimate relief it seeks. *Id.* at 1360. *Accord Diversified Mortgage Investors v. U. S. Life Title Ins. Co. of New York,* 544 F.2d 571, 576 (2d Cir. 1976).

■ Furthermore, "mandatory injunctions . . . are not granted unless extreme or very serious damage will result." *Clune v. Publishers' Association of New York City,* 214 F.Supp. 520, 531 (S.D.N.Y.), *aff'd on opinion below,* 314 F.2d 343 (2d Cir. 1963).

At the hearing, however, it appeared that plaintiff sought only to maintain the status quo.[2] Even if the lesser standards applied to prohibitory injunctions designed to preserve the status quo were applicable, plaintiff cannot sustain its burden. Preliminary injunctive relief in this Circuit calls for a showing of

(a) irreparable harm and (b) either (1) likelihood of success on the merits or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief.

*Jackson Dairy, Inc. v. H. P. Hood & Sons, Inc.,* 596 F.2d 70, 72 (2d Cir. 1979).

---

2. Plaintiff's counsel asked the court "to direct the defendants to let the plaintiff carry on its first amendment activities by using the property as a religious retreat while they make up their minds." Tr. 17. This request was apparently in response to the court's difficulty in finding the existence of a case or controversy. Tr. 11.

■■ In order to satisfy the first prong of this test, the threatened irreparable harm must be actual and imminent and not remote and speculative. *State of New York v. Nuclear Regulatory Commission,* 550 F.2d 745 (2d Cir. 1977). Plaintiff premises its demand for injunctive relief upon the occurrence of events that may or may not transpire at some time in the future. Such claims fail to rise to the level of immediate and irreparable constitutional injury. There is no present threat of serious damage to plaintiff preventable only by this court's intervention. Neither the Zoning Board nor any of the other defendants has taken a single step causing plaintiff immediate or irreparable harm. The dispute is thus not yet ripe for determination.

■ Similarly specious is plaintiff's claim of irreparable harm if the Zoning Board proceedings are allowed to continue. Plaintiff is not suffering any deprivation except that like every other land owner, it is not permitted to alter the use of its property without first seeking to comply with local law. Because of its claim to special constitutional status as a religious entity plaintiff complains that it is being subjected to an unconstitutional prior restraint by having to apply for a special institutional use permit. I find the principles of *Freedman v. Maryland,* 380 U.S. 51, 85 S.Ct. 734, 13 L.Ed.2d 649 (1965), relied upon by plaintiff to support its contention to be inapposite. Plaintiff is not being denied the use of or access to its property for the exercise of its religious beliefs in violation of claimed first amendment rights. There is therefore no prior restraint. *See Young v. American Mini Theatres, Inc.,* 427 U.S. 50, 96 S.Ct. 2440, 49 L.Ed.2d 310 (1976). The property in question was formerly owned by the Sisters of the Cenacle who used the property

in the manner of a non-conforming use. That non-conforming use lapsed prior to the time plaintiff purchased the property.[3] The sole permitted use, therefore, was for single family residence. Under this permitted use, plaintiff may enjoy its first amendment rights to conduct its religious activities on the property and observe its religious beliefs. In *Young v. American Mini Theatres, Inc. supra,* the Supreme Court drew this distinction between unconstitutional limitation of access to first amendment expression and constitutional regulation thereof by zoning ordinance. The Court found that the latter involves no prior restraint. *Id.* at 71–73, 78–79.

The second prong of the test requires either likelihood of success on the merits or sufficiently serious questions going to the merits of the moving party's cause of action. Plaintiff's complaint is predicated on the propositions that New Castle's zoning ordinance is unconstitutional both on its face and as applied. The first cause of action set forth in the complaint alleges that the zoning ordinance is violative of the first and fourteenth amendments because (1) "it fails to provide on its face an expeditious and time limited proceeding" for determination of special use permits; (2) "it purports to make convenience of the community a consideration for the granting of a permit for religious use"; and (3) it requires consideration of such factors as "harmony with the surrounding areas" and "conduciveness to development" for determination of special use permits. The second cause of action is predicated on the alternative proposition that the zoning ordinance has been applied "in such a manner as unconstitutionally to interfere with the free exercise of religion and the [plaintiff's]

---

**3.** Before the Sisters of the Cenacle acquired title to the property, they applied to the Zoning Board to operate a private school on what was then residential property. The ordinance which was in existence at that time permitted private schools on residential property by special approval. The Sisters were granted leave to utilize the property as a religious retreat after protracted hearings on their application. In 1971 New Castle adopted the present zoning ordinance which relegated the property held by the Sisters to the status of a permitted non-conforming use. In 1973 the Sisters of Cenacle abandoned the property and its non-conforming use, and sold the property to two physicians. The buyers thereafter defaulted on the purchase money mortgage held by the Sisters; the Sisters foreclosed on the mortgage and sold the property to plaintiff at a public auction.

rights of assembly, speech and publication." [4]

Insofar as plaintiff's claim of unconstitutionality of the zoning ordinance by reason of the absence of a time limit in which the Zoning Board must act, the contention is insupportable. The ordinance mandates a decision within 90 days from the time a completed application is filed. Plaintiff has yet to complete its application since it has not yet filed the DEIS required by the Zoning Board acting in accordance with the duties imposed upon it by the SEQR. [5] With respect to plaintiff's other claims of constitutional infirmity, I find that they hardly rise to the level of constitutional deprivation. Plaintiff has therefore failed to sustain its burden of establishing that it is likely to succeed on the merits.

■■ Furthermore, with respect to the second prong of the test requiring a showing of sufficiently serious questions going to the merits of plaintiff's claims, the Unification Church has failed to sustain its burden again. The Zoning Board's sole and legitimate concern pertains to the inquiry into whether the proposed new and expanded use will have a negative effect on the public safety, health and welfare. Because of the extreme significance attached to the state's exercise of its police power in the zoning area, *Young v. American Mini Theatres, Inc.*, 427 U.S. at 80, 96 S.Ct. 2440 (Powell, J., concurring), the law has evolved to the point of recognizing that when in conflict with legitimate zoning concerns as public safety, health and welfare, the first amendment guarantee of religious expres-

sion cannot be viewed as absolute. Reasonable accommodations constituting incidental infringement upon religious expression are constitutionally permissible when legitimate conflict arises. *See, e. g., Young v. American Mini Theatres, Inc., supra* (upholding the constitutionality of a zoning ordinance which imposed restrictions upon the exercise of first amendment rights); *Jewish Reconstructionist Synagogue of North Shore, Inc. v. Incorporated Village of Roslyn Harbor*, 38 N.Y.2d 283, 291–92, 379 N.Y.S.2d 747, 756, 342 N.E.2d 534, 543 (1975) (Breitel, J., concurring) (religious institutions should be required to accommodate factors relevant to public health, safety or welfare).

■ Additionally, plaintiff contends that the proceedings before the Zoning Board are directed toward an impermissible inquiry into the bona fides of plaintiff's religious beliefs. While inquiry into plaintiff's religious beliefs is constitutionally impermissible, the Supreme Court, in the landmark case of *Cantwell v. Connecticut*, 310 U.S. 296, 304, 60 S.Ct. 900, 84 L.Ed. 1213 (1940), held that conduct remains subject to regulation. It has recently been found that

> [w]hen . . . an individual seeks to act on a belief, and that action poses a threat or inconvenience to other citizens, or to some important aspect of public law and policy, the requirements of an ordered society may demand that the courts make limited inquiry into bona fides.

*Stevens v. Berger*, 428 F.Supp. 896, 900 (E.D.N.Y.1977), citing *Cantwell v. Connecticut*, 310 U.S. 296, 60 S.Ct. 900, 84 L.Ed. 1213 (1940).

---

4. Plaintiff's third, sixth and ninth causes of action seek damages of $1,000,000 each against defendant New Castle and against its building inspector and the members of the Zoning Board, individually, by reason of alleged deprivations of plaintiff's constitutional rights. Plaintiff's fourth and fifth causes of action seek declaratory and injunctive relief requiring defendants to permit plaintiff to carry on its religious activities and precluding defendants from inquiring into "the nature, theology, affiliations, finances, personnel, structure, or other private aspects" of plaintiff on the grounds that it is a religious organization. Finally, plaintiff's seventh and eighth causes of action seek injunctive relief and damages for alleged violations of the New York State Constitution and

section 40–c of New York's Civil Rights Law (McKinney's 1976).

5. Section 60–432 of New Castle's zoning ordinance requires that the Zoning Board "after public hearing . . . shall, within ninety (90) days of the date of the Board of Appeals meeting at which such application was originally submitted, file with the Building Inspector a report on [application for special permits]."

Defendants' attorney admitted at the hearing on November 21, 1979 that when plaintiff files the DEIS its application will be complete and the time limit provided in the statute would commence to run. Tr. 35–36.

The Zoning Board has taken no action to place such religious beliefs in issue before it. It is clear however that should such inquiry eventually be made into the bona fides of plaintiff's religious beliefs as they relate to its proposed conduct, no constitutional injury will be suffered by plaintiff. Plaintiff has therefore failed to demonstrate any reasonable probability of success on the merits or serious questions respecting the merits to satisfy either requisite of the second prong of the Second Circuit test.

Moreover, as set forth above, plaintiff's alleged constitutional injury is purely speculative. I therefore find that this court lacks jurisdiction since there is no case or controversy before it. *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 240–41, 57 S.Ct. 461, 81 L.Ed. 617 (1937).

Finally, the doctrine of federal abstention precludes this court from issuing injunctive relief to enjoin on-going state proceedings. *Huffman v. Pursue, Ltd.*, 420 U.S. 592, 95 S.Ct. 1200, 43 L.Ed.2d 482 (1975). Plaintiff, by its motion requests this court to intervene in the pending proceeding before the Zoning Board by passing on the merits of plaintiff's application thereby divesting the Board of powers granted to it by state and local law. The Supreme Court recognized in *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971) that ours is a system in which

> the National Government, anxious though it may be to vindicate and protect federal rights and federal interests, always endeavors to do so in ways that will not unduly interfere with the legitimate activities of the States.

*Id.* at 44, 91 S.Ct. at 750. It has been held that a state's regulation of land use within its jurisdiction is just such a legitimate activity of a state within the ambit of the federal abstention doctrine. *See Fralin & Waldron, Inc. v. City of Martinsville*, 493 F.2d 481 (4th Cir. 1974) (court abstained from engaging in adjudications respecting the issuance of special use permit).

Where, as here, local authorities are charged by law with the duty of considering and maintaining the health, safety and welfare of the local community, it is inappropriate for this court to enter mandatory injunctive relief which will divest such local authorities of the power and responsibility delegated to them by state law.

Plaintiff has not been able to demonstrate at this stage in the Zoning Board proceedings that it has suffered any actionable constitutional deprivation. Moreover, if this court were to intervene in the Zoning Board's consideration of plaintiff's application, the residents of the Town of New Castle would be deprived of their first amendment guarantees of freedom of speech and expression. The court is cognizant that there are two sets of competing first amendment privileges involved in this process, but I do not find that the hardship resulting from the alleged deprivation of plaintiff's rights tips the scale against the residents of New Castle. To find otherwise would be an invitation to every party to a state proceeding claiming a constitutionally protected right who is frustrated by delay to commence an action in federal court. Such an invitation would eviscerate the rule of *Younger v. Harris, supra,* and its progeny which compels a federal court to abstain from interfering with the state's exercise of its sovereign functions. This court will therefore not intervene in the on-going hearings now being conducted by the Zoning Board and compel the issuance of a special permit.

Accordingly, plaintiff's motion for a preliminary injunction is denied and the complaint is dismissed.

SO ORDERED.