CENTRAL AVENUE NEWS, INC., a Delaware Corporation d/b/a Last Chance Bookstore, Inc., Appellant,

v.

The CITY OF MINOT, NORTH DAKOTA, a Home Rule Municipality; Chester Reiten in his official capacity as Mayor of the City of Minot, North Dakota; Carroll Erickson in his official capacity as Chief of Police and head of Licensing Dept.; and Bert Peckman as City Engineer and Zoning Administrator in their official capacities for the City of Minot, North Dakota, Appellees.

No. 80–1521.

United States Court of Appeals, Eighth Circuit.

Submitted Feb. 10, 1981.

Decided June 9, 1981.

Rehearing Denied July 13, 1981.

Timothy J. Austin, Mandan, N. D., for appellant; Arthur M. Schwartz, Denver, Colo., of counsel.

Nevin Van de Streek, Minot, N. D., for appellees.

Before ROSS, HENLEY and McMILLI-AN, Circuit Judges.

McMILLIAN, Circuit Judge.

Appellant, Central Avenue News, Inc., appeals from an order of the district court[1] that dismissed without prejudice its complaint against the City of Minot, based upon

1. The Honorable Bruce M. Van Sickle, United States District Judge for the District of North Dakota.

the abstention doctrine enunciated in *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971). For reversal appellant argues that this case falls within at least one of the narrow exceptions to that doctrine. For the reasons discussed below, we affirm the judgment of the district court.

Appellant, Central Avenue News, Inc., a Delaware corporation, has operated the Last Chance Bookstore in Minot, North Dakota since 1979. The bookstore sells sexually-explicit books and magazines to consenting adults and shows motion pictures that depict sexual behavior. Appellant's bookstore was the first, and is to date the only, adult bookstore to operate within the Minot city limits.

A few months before appellant's bookstore opened its doors, city officials learned that an adult bookstore was planning to open for business. The City Council quickly drafted an ordinance specifically designed to regulate businesses of this sort. The City Council enacted two ordinances, Minot Ordinance Nos. 2336 and 2337 (*see* Appendix).

Ordinance No. 2336 is an amendment to the City of Minot Zoning Ordinance. It adds to the zoning ordinance definitions of the terms "adult bookstore," "adult cinema" and "adult entertainment center." Under the amended ordinance an adult bookstore, cinema or entertainment center must exclude minors and can be located no closer than 1,250 feet from a pre-existing church, school or residential district. The managers and owners of the center must supply the police with their names, fingerprints, prior criminal records and such other information that the chief of police might reasonably require. Finally, city police officers in the course of the discharge of their official duties must be provided access to the premises at no cost. This ordinance was not passed in final form prior to the opening of the bookstore. Thus, to serve the intended purpose, the statute was given retroactive application.

Ordinance No. 2337 amends the portion of the City Code pertaining to the licensing of mechanical amusement devices to include devices which are used to depict or portray specified anatomical areas or specified sexual activities. Further, Ordinance No. 2337 imposes upon "peep show" operators a license fee of $300 per year per device irrespective of the number of machines which are under common ownership. All other mechanical devices regulated under Ordinance No. 2337 are subject to an annual license fee of $25 per machine and up to a maximum annual fee of $250.

On November 8, 1979, three days prior to the filing of this federal action, appellees brought an action in state court against appellant's bookstore. Appellees sought an injunction requiring Central Avenue News, Inc. to comply with the Minot Ordinance Nos. 2336 and 2337. Three days later, pursuant to 42 U.S.C. § 1983, appellant filed this action in federal court seeking to restrain the City of Minot from enforcing the amended licensing and zoning ordinances and seeking a declaratory judgment holding the two ordinances void as violating their first, fourth, fifth and fourteenth amendment rights.

On May 23, 1980, the district court dismissed without prejudice appellant's complaint. This appeal followed.

## I. *The Younger Doctrine*

Appellant admits that the *Younger* doctrine is generally applicable to cases of this sort, but due to the factual setting of this case, appellant contends that it is within at least one of the narrow exceptions to the operative effect of *Younger.* We disagree.

The basic premise of the *Younger* doctrine is that federal equitable intervention is not warranted if the federal plaintiff can secure a full and fair trial on his or her constitutional claims by raising them by way of a defense in a state enforcement proceeding that is already underway. *See Trainor v. Hernandez,* 431 U.S. 434, 436, 97 S.Ct. 1911, 1914, 52 L.Ed.2d 486 (1977). The central notions of "comity and federalism" found in *Younger* are that a defendant in a

state prosecution is provided an adequate judicial remedy, one that is the substantial equivalent of the remedy available in the federal courts. *See Douglas v. City of Jeannette,* 319 U.S. 157, 164, 63 S.Ct. 877, 881, 87 L.Ed. 1324 (1943).

The key to *Younger* is the existence of a pending or imminent state proceeding. Appellant concedes in its brief that an enforcement proceeding was commenced in state court three days prior to the filing of its complaint in federal court.

■ A federal court, without a showing of extraordinary circumstances, should not place itself in the position of holding a state statute, not yet construed by the state courts, to be unconstitutional where a permissible construction of the statute is possible. *Younger v. Harris, supra,* 401 U.S. at 53–54, 91 S.Ct. at 755. Such a decision not only is a waste of judicial resources but also provokes a needless collision between state and federal power. *Id. See also* Maraist, *Federal Intervention in State Criminal Proceedings*: Dombrowski, *Younger and Beyond,* 50 Tex.L.Rev. 1324 (1972); Wechsler, *Federal Courts, State Criminal Law and the First Amendment,* 49 N.Y.U.L.Rev. 740 (1974).

## II. *Civil Proceeding*

■ Appellant contends that a less stringent standard governs the application of *Younger* to this case because this case arises in a civil rather than criminal context. We do not find any support for that bald proposition. *Moore v. Sims,* 442 U.S. 415, 99 S.Ct. 2371, 60 L.Ed.2d 994 (1979).

In *Huffman v. Pursue, Ltd.,* 420 U.S. 592, 600–01, 95 S.Ct. 1200, 1206–1207, 43 L.Ed.2d 482 (1975), the Court extended the principle of *Younger* to state-initiated civil proceedings. The state of Ohio had brought civil actions under its obscenity laws to "abate" the showing of obscene movies in a theater leased by Pursue. After the state court had issued a final order of abatement, Pursue filed a federal complaint challenging the validity of the state obscenity statute. The Supreme Court held that *Younger* ap-

plied to state civil proceedings where "[t]he State is a party to the . . . proceeding, and the proceeding is both in aid of and closely related to criminal statutes . . . ." *Id.* at 604, 95 S.Ct. at 1208. The Court rejected the argument that *Younger* should be restricted to criminal prosecutions and held that *Younger* requires that the state courts be allowed initially to decide federal claims in appropriate state civil proceedings. *See also Louisville Area Inter-Faith Committee v. Nottingham Liquors, Ltd.*, 542 F.2d 652 (6th Cir. 1976).

Most recently the Supreme Court in *Moore v. Sims, supra*, 442 U.S. at 423–35, 99 S.Ct. at 2377–2383, reinforced its decision in *Huffman v. Pursue, Ltd., supra*, 420 U.S. at 604, 95 S.Ct. at 1208, and held that *Younger* is fully applicable to civil proceedings in which important state interests are involved. *Moore v. Sims* involved a state initiated civil proceeding to enforce a Texas child abuse statute. According to the Court, the only pertinent issue in abstention cases of this type is whether appellant's constitutional claims could have been raised in the pending state proceeding. This inquiry is essential because abstention is appropriate unless state law clearly bars the interposition of the constitutional claims in the pending state proceeding. *Moore v. Sims, supra*, 442 U.S. at 430, 99 S.Ct. at 2380–2381.

■ We note that appellant's constitutional challenges are directed primarily at the facial invalidity of the two ordinances. It is clear that these constitutional issues can be raised as a defense in the normal course of the pending state enforcement proceeding; thus, the district court's abstention was appropriate. *But cf. Gerstein v. Pugh*, 420 U.S. 103, 108 n.9, 95 S.Ct. 854, 860 n.9, 43 L.Ed.2d 54 (1975) (federal injunction not barred by *Younger* because the injunction was not addressed to a state proceeding and therefore did not interfere with state criminal prosecution).

We hold that the district court correctly found the *Younger* doctrine applicable to the present case. Here, the City's action against appellant involves the vindication of important state interests promoting the general welfare.

We note that our holding today is not "the first step towards extending to state *civil* proceedings generally the holding of *Younger v. Harris.*" *Huffman v. Pursue, Ltd., supra*, 420 U.S. at 613, 95 S.Ct. at 1212 (Brennan, J., dissenting). This case in no way should be read as transmitting *Younger* into an all-purpose discretionary device for limiting federal jurisdiction in civil rights cases. *Moore v. Sims, supra*, 442 U.S. at 427–31, 99 S.Ct. at 2379–2381 (Stevens, J., dissenting).

■ The doctrine of *Younger v. Harris* reflects an accommodation and balance of competing interests. The district court struck a proper balance and correctly decided that the abstention doctrine applies. The *Younger* doctrine, however, is not to be mechanically applied by federal courts. Federal courts must closely examine the circumstances surrounding the nature and status of the pending state litigation to determine whether an exception to the *Younger* doctrine is warranted. *Kugler v. Helfant*, 421 U.S. 117, 95 S.Ct. 1524, 44 L.Ed.2d 15 (1975); *Doe v. McConn*, 489 F.Supp. 76 (S.D.Tex.1980); *Unification of World Christianity v. Town of New Castle*, 480 F.Supp. 1212 (S.D.N.Y.1979).

We now turn to appellant's claim that extraordinary circumstances are present that justify an exception to the general rule.

### III. *Harassment, Bad Faith Enforcement*

Appellant's strongest argument is under the "bad faith" exception to the *Younger* doctrine that requires a showing that the ordinance was drafted, and is being enforced, in bad faith and with the intent to harass appellant. *Younger v. Harris, supra*, 401 U.S. at 48, 91 S.Ct. at 752.

Federal intervention in pending state proceedings that have been tainted by harassment and bad faith law enforcement cannot be properly characterized as a disregard for the competence of state court judges, or as a disregard for the over-

whelming expectation that they will carry out their oaths to support the federal constitution.

The leading case dealing with irreparable injury resulting from bad faith prosecution and harassment is *Dombrowski v. Pfister*, 380 U.S. 479, 85 S.Ct. 1116, 14 L.Ed.2d 22 (1965). Pursuant to the Louisiana Subversive Activities and Communist Control Law and the Communist Propaganda Control Law, unlawful arrests, searches, seizures and prosecutions were allegedly undertaken with no expectation of obtaining valid convictions. The items seized were allegedly used to harass those engaged in activities protected by the first amendment. The Court held that the complaint stated a claim for equitable relief even though there existed a pending state court prosecution of the plaintiffs. *Id.* at 483–84, 85 S.Ct. at 1119–1120.

The Supreme Court further explained the bad faith exception in *Cameron v. Johnson*, 390 U.S. 611, 88 S.Ct. 1335, 20 L.Ed.2d 182 (1968), where the exception was treated as applying to a special class of cases in which the pending state proceeding was inadequate to vindicate rights guaranteed by the federal constitution. *Id.* at 614, 88 S.Ct. at 1337.

There are a number of reasons supporting the bad faith exception. First, where there is no expectation of a valid conviction, proceedings in the state court are frivolous and thus the federal court will derive no benefit from giving deference to the state proceeding. Additionally, the consequences of the arrestee's entry into the state criminal justice system may be more onerous than usual when bad faith prosecution is present. For example, the arrest may be attended with undue publicity thereby resulting in an undue impairment of first amendment rights. Finally, the extent of prosecutorial power is so great that its abuse may have a serious detrimental effect upon the defendant before a state proceeding ends.

Given this background, we proceed to examine the facts before us to determine if the irreparable harm posed by the continued enforcement of Ordinance Nos. 2336 and 2337 approach that which has been associated with bad faith.

The district court's opinion gave considerable attention to the evidence presented by appellant. The district court's findings are as follows:

> The Plaintiff's evidence as to harassment was presented by the adult bookstore manager and was to the effect that she was harassed by the selective enforcement of parking ordinances as to her car and that of her customers; that she was harassed by aggressive interrogation and observation of her store and customers by certain council members; by overt and constant surveillance of her business by uniformed policemen and marked police cars; and by surreptitious observation of her store and customers by council members and police in mufti.

> At the outset I observe that the witness did not present her evidence convincingly. . . . [H]er evidence was general and vague as to time, place and number of incidents. Where she did present a claim of an identifiable incident, the controverting evidence was stronger and more persuasive.

> . . . .

> So, I conclude, after a review of all the evidence that the claim of harassment as an official policy of the City and its responsible officers acting within their authority was not proved . . . .

*Central Avenue News, Inc. v. City of Minot*, No. A4–79–179 (D.N.D. May 23, 1980) (slip op. at 6–8).

The district court's findings were not clearly erroneous. Although appellant was harassed by a particular council member who undertook to interrogate customers and to generally make a nuisance of himself outside the bookstore, there is no evidence that his antics were encouraged or condoned by the City Council. The allegations of overt police surveillance were negated by the bookstore manager's testimony that at least some of the police appearances at appellant's bookstore were a result of the manager's requests for police investigation of recent robberies at the bookstore.

As previously noted, federal interference with proceedings pending in state court is justified only if it could be shown that the proceedings were the product of bad faith on the part of law enforcement officials or that other extraordinary circumstances existed. The gravamen of bad faith prosecution is the lack of a reasonable expectation that valid convictions will result. *Eagle Books, Inc. v. Reinhard*, 418 F.Supp. 345, 351 (N.D. Ill. 1976), *vacated on other grounds*, 432 U.S. 902, 97 S.Ct. 2942, 53 L.Ed.2d 1073 (1977). Although appellant's chances of success in state court may be tainted by a mere possibility of erroneous initial application of constitutional standards, there is no evidence to support appellant's contention that the questionable conduct displayed by the police and the public official acting as a private citizen was tantamount to bad faith enforcement and prosecution.

Further, the record contains no evidence of irreparable injury resulting from the district court's abstention. Thus we do not reach the question of whether irreparable injury alone is sufficient to warrant an exception to *Younger*. *Cf. Steffel v. Thompson*, 415 U.S. 452, 455, 94 S.Ct. 1209, 1213, 39 L.Ed.2d 505 (1974).

Appellant's bookstore is currently open and doing business and has not presented evidence of economic loss. The record does not reflect that the state enforcement proceeding has discouraged patronage of the bookstore. *See Spiegel v. City of Houston*, 636 F.2d 997, 1001 (5th Cir. 1981) (injunction imposed but no state action pending). The City of Minot has neither threatened to close appellant's bookstore nor forced appellant to move its business to another location. Further, the district court found credible the City Manager's testimony that he "undertook, by affirmative actions, directions, and overall supervision of official personnel to be sure that during the period involved, [appellant's] business was treated as any other business." *See Kugler v. Helfant, supra*, 421 U.S. at 124–25, 95 S.Ct. at 1530, 1531. Thus, the finding of the district court that "the claim of great and immediate irreparable injury was not proved" was also not clearly erroneous.

## IV. *Ordinances Obviously Unconstitutional*

While the congressional scheme made the federal courts the "primary guardians of constitutional rights," *Perez v. Ledesma*, 401 U.S. 82, 104, 91 S.Ct. 674, 686, 27 L.Ed.2d 701 (1971) (Brennan, J., concurring in part and dissenting in part), federal courts must be careful not to intervene unnecessarily with pending state proceedings because such intervention will be interpreted as reflecting negatively upon the state court's ability to enforce federal constitutional principles. *But see Gibson v. Berryhill*, 411 U.S. 564, 575, 93 S.Ct. 1689, 1696, 36 L.Ed.2d 488 (1973).

But abstention is not required when it amounts to a mere deferral to a state court to apply federal constitutional law to a state statutory scheme; *Brown v. Liberty Loan Corp.*, 539 F.2d 1355 (5th Cir. 1976). *See also Coleman v. Ginsberg*, 428 F.2d 767 (2d Cir. 1970). And clearly, *Younger* notwithstanding, the district court may exercise its jurisdiction over the case when the plaintiff establishes that the challenged ordinances are patently and flagrantly unconstitutional. *Doe v. Bolton*, 410 U.S. 179, 93 S.Ct. 739, 35 L.Ed.2d 201 (1973); *Zwickler v. Koota*, 389 U.S. 241, 88 S.Ct. 391, 19 L.Ed.2d 444 (1967).

The plaintiff, however, carries a strong burden in establishing the overwhelming unconstitutionality of the state statute. *Huffman v. Pursue, Ltd., supra*, 420 U.S. at 602, 95 S.Ct. at 1207. If the state statute in question, although never interpreted by a state tribunal, is not fairly subject to an interpretation which will render unnecessary or substantially modify the federal constitutional question, it is the duty of the federal court to exercise its jurisdiction. *Harman v. Forssenius*, 380 U.S. 528, 85 S.Ct. 1177, 14 L.Ed.2d 50 (1965). Relevant state statutory provisions must, however, be relatively plain and unambiguous for there to be no necessity for the federal court to abstain pending determina-

tion of the issue in a state court. *Trainor v. Hernandez, supra*, 431 U.S. at 440–43, 97 S.Ct. at 1916–1917.

 The Minot Ordinances Nos. 2336 and 2337 contain language that raises legitimate constitutional questions (*see* Appendix at A–2). We are convinced, however, that the troubling portions of the statute are insubstantial to establish that both ordinances sanction blatant and flagrant constitutional violations. Thus, appellant has also failed to come within the narrow scope of this exception to the *Younger* doctrine.

V. *Conclusion*

The state court is an adequate forum for the appellant to vindicate his constitutional rights. Under these circumstances, we believe the restraining of an ongoing state proceeding would be a failure to give effect to the principle that state courts share the solemn responsibility, equally with the federal courts "to guard, enforce and protect every right granted or secured by the Constitution of the United States . . . ." *Robb v. Connolly*, 111 U.S 624, 637, 4 S.Ct. 544, 551, 28 L.Ed. 542 (1884); *see also Colorado River Water Conservation District v. United States*, 424 U.S. 800, 813, 96 S.Ct. 1236, 1244, 47 L.Ed.2d 483 (1976).

The district court correctly procedurally applied the *Younger* doctrine. Ordinarily, better practice calls for a district court invoking *Younger* abstention to dismiss the complaint without prejudice instead of retaining jurisdiction. *Juidice v. Vail*, 430 U.S. 327, 348, 97 S.Ct. 1211, 1223, 51 L.Ed.2d 376 (1977) (Stewart, J., dissenting); *Coley v. Clinton*, 635 F.2d 1364, 1373–79 (8th Cir. 1980). The overriding concern of the district court when applying *Younger* is to fashion a procedure that removes obstacles to state court jurisdiction but preserves the claimant's federal claim so that it may be raised in a federal forum after the state courts have been given the opportunity to address the questions appropriately presented to them. *Juidice v. Vail, supra*, 430 U.S. at 330, 97 S.Ct. at 1214.

Thus, for the reasons stated above, appellant has not shown itself to be within either of the narrow exceptions to the *Younger* doctrine. The decision of the district court is hereby affirmed.

APPENDIX

ORDINANCE NO. 2336

AN ORDINANCE TO AMEND THE ZONING ORDINANCE, ORDINANCE NUMBER 1149, AS AMENDED, IN ORDER TO DEFINE ADULT ENTERTAINMENT CENTER AND OTHER RELATED TERMS AND TO PROVIDE THAT ADULT ENTERTAINMENT CENTERS BE RESTRICTED TO LOCATIONS WITHIN THE "M–2" HEAVY INDUSTRIAL ZONE UNDER CERTAIN CONDITIONS AND LIMITATIONS.

BE IT ENACTED BY THE CITY COUNCIL OF THE CITY OF MINOT:

1. Section 2.1 of the Zoning Ordinance, ordinance number 1149, as amended, is hereby amended by the addition thereto of the following definitions:

(1.1) *Adult Bookstore*: An enclosed building having as a substantial or significant portion of its stock in trade, books, magazines, or other periodicals which are distinguished or characterized by their emphasis on matter depicting or describing specified sexual activities or specified anatomical areas.

(1.2) *Adult Cinema*: An enclosed building used on a regular basis for presenting pictorial materials or other visual images by way of direct or indirect projection, which materials are distinguished or characterized by an emphasis on the depiction of specified sexual activities or specified anatomical areas, for observation by patrons therein in return for the payment of a consideration, irrespective of the number of patrons who may be able to view the presentation at one time.

(1.3) *Adult Entertainment Center*: An adult book store or adult cinema, or both.

(45.1) *Specified Anatomical Areas*:

(a) Less than completely and opaquely covered:

(1) Human genitals, pubic region;

(2) Buttock;

(3) Female breast below a point immediately above the top of the areola; and

(b) Human Male genitals in a discernibly turgid state, even if completely and opaquely covered.

(45.2) *Specified Sexual Activities*:

(a) Human genitals in a state of sexual stimulation or arousal;

(b) Acts of human masturbation, sexual intercourse, or sodomy;

(c) Fondling of human genitals, pubic region, buttock or female breast.

2. Chapter 15 of the Zoning Ordinance is amended by adding thereto the following section 15–5.

Section 15–5. *Adult Entertainment Center.* Notwithstanding anything in this zoning ordinance to the contrary, an adult entertainment center shall be permitted only in the M–2 District and in no other district, and then only if the center meets the following conditions:

(1) The center is located no closer than 1250 feet from any pre-existing church, school or property zoned R1, R2, R3, or R4.

(2) The center excludes from its premises those persons less than 18 years of age.

(3) The center displays no signs visible from the exterior of the center, except for signs identifying the center as an adult book store or adult cinema or both.

(4) No materials depicted specified sexual activities or specified anatomical areas shall be visible from the exterior of the center.

(5) The manager and the owners of the center are registered with the Chief of Police and have provided him with such information as he reasonably may require with respect to their identities, including finger prints, and prior criminal records, if any.

(6) The business premises of the center which are generally open to its patrons are open equally at the same time without charge to members of the city police force who may wish to enter thereon provided the entry is in the course of the discharge of the policeman's duties.

3. Effective date. This ordinance shall become effective as of final passage and approval, but shall be applied retroactively as of October 1, 1979, so that a non-conforming use which comes into existence on or after October 1, 1979, and before the second reading of this ordinance shall not be considered a prior valid non-conforming use.

4. "In the event that the retroactive application of this ordinance provided for in Section 3 results in the taking of any person's vested rights in such a manner as to require under either the state or federal constitution that he be given just compensation for the taking, the city shall pay compensation to him in the constitutionally required amount in order to permit the retroactive application of this ordinance. The city council by resolution of a majority of its members may authorize the commencement of an eminent domain proceeding in order to condemn rights deemed to have been taken or it may authorize a confession of judgment in the proper amount."

5. *Severability.* The provisions in the ordinance are severable and if any of the provisions, sentences, clauses or paragraphs shall be held unconstitutional, contrary to statute, exceeding the authority of the city or otherwise illegal or inoperative by any court of competent jurisdiction, the decision of such court shall not affect or impair any of the remaining provisions, unless the court should conclude that the partial invalidation would frustrate the intent of this ordinance.

ORDINANCE NO. 2337

AN ORDINANCE TO AMEND SECTIONS 6–42 AND 6–54 OF THE CODE OF ORDINANCES PERTAINING TO LICENSE FEES FOR MECHANICAL AMUSEMENT DEVICES

BE IT ENACTED BY THE CITY COUNCIL OF THE CITY OF MINOT:

1. *Legislative intent and purpose.*

The purpose of this ordinance is to recognize and to provide for the fact that the

operation of mechanical amusement devices which depict or display specified sexual activities or specified anatomical areas results in increased enforcement problems for the city and additional expense to the city that justifies a higher license fee for these devices than for other mechanical amusement devices. This follows because it is not immediately possible to distinguish between constitutionally protected non-obscene depictions or portrayals of explicit sexual conduct, on one hand, from non-constitutionally protected obscene portrayals of sexual conduct on the other hand. This necessitates greater police vigilance to assure that the lawful business of displaying non-obscene portrayals or depictions of sexual conduct is not used inadvertently or by design as the means of unlawfully displaying or depicting obscenity. In order to recoup some of the costs thus imposed on the city it is appropriate that there be imposed on the persons who profit from such devices some of the costs of insuring that the devices are used only lawfully.

2. Section 6–42 of the Code of Ordinances is amended to read as follows:

Section 6–42. *Definition*

A "mechanical amusement device" is a machine which, upon the insertion of a coin or the payment of consideration, operates or may be operated for use as a game, contest, or amusement of any description, or which depicts, displays, or projects directly or indirectly pictures, photographs or other visual images.

3. Section 6–54 of the Code of Ordinances is hereby amended to read as follows:

Section 6–54. *License Fees.*

(a) The license fee for a mechanical amusement device, other than a device used on a regular basis to depict or display specified anatomical areas or specified sexual activities, shall be $25.00 a year for each device, provided that the owner of 10 or more such devices subject to licensing need pay only $250.00 a year for annual licenses for all of his machines.

(b) The license for a mechanical amusement device used on a regular basis to depict or display specified anatomical areas or specified sexual activities shall be $300.00 a machine per year, irrespective of a number of machines owned by any one person.

(c) The terms "specified anatomical areas" and "specified sexual activities" as used herein are defined in section 2–1 of the zoning ordinance, ordinance number 1149, as amended.

(d) The owner of the mechanical amusement device shall furnish a complete list of all devices owned by him subject to licensing with an indication thereon of the location of each machine. The information will be provided as part of the application for a license or licenses.

(e) The fees provided for herein shall be payable on July 1st of each year, and prorated on a daily basis if a license becomes effective at any time other than July 1.

4. This ordinance shall become effective upon final passage and approval. Existing licenses shall remain in effect until they expire by their own terms or upon July 1, 1980, whichever first occurs, except that an increase of license fees with respect to any existing licenses or class of licenses which is accomplished by this ordinance it shall become effective upon the effective date of this ordinance, subject to proration as provided by in subsection 6–54(e).

5. *Severability.* The provisions in the ordinance are severable and if any of the provisions, sentences, clauses or paragraphs shall be held unconstitutional, contrary to statute, exceeding the authority of the city or otherwise illegal or inoperative by any court of competent jurisdiction, the decision of such court shall not affect or impair any of the remaining provisions, unless the court should conclude that the partial invalidation would frustrate the intent of this ordinance.