NEW EDUCATION DEVELOPMENT SYSTEMS, INC., a California non-profit corporation, Plaintiff,

v.

James BOITANO, Napa County District Attorney, et al., Defendants.

Nos. C 79–2736 SAW, M–80–81–C.

United States District Court, N.D. California.

Oct. 26, 1983.

Fred H. Altshuler, Altshuler & Berzon, San Francisco, Cal., for plaintiff.

Richard J. Lucas, Robert E. Freitas, Orrick, Herrington & Sutcliffe, San Francisco, Cal., Stephen W. Hackett, County Counsel of the County of Napa, Napa, Cal., for defendants.

## ORDER

WEIGEL, District Judge.

### A. *Background*

Plaintiff New Education Development Systems, Inc. (NEDS) is a nonprofit corporation affiliated with the Unification Church. NEDS owns a parcel of real property in northeastern Napa County known as Aetna Springs, historically used as a resort. Since purchasing the property in 1976, NEDS has sought to use Aetna Springs as a year-round educational and recreational retreat facility for up to 250 members of the Unification Church. However, authorities in Napa County, acting pursuant to the local zoning ordinance, have denied NEDS permission to use Aetna Springs in the desired manner.

In November, 1979, NEDS filed suit in this Court, alleging that the county's action in denying the permit violated the First and Fourteenth Amendments to the Constitution. This Court, recognizing that a state court decision on the controlling municipal ordinance could render adjudication of the constitutional issues unnecessary, indicated that it would abstain from deciding NEDS's federal claims if the parties could agree upon a suitable interim arrangement to protect the plaintiff's rights. *See Railroad Commission v. Pullman*, 312 U.S. 496, 500–01, 61 S.Ct. 643, 645, 85 L.Ed. 971 (1941). The parties agreed to a stipulation governing NEDS rights to use Aetna Springs during the interim period, and this Court abstained. The Court retained jurisdiction to entertain the plaintiff's federal claims should state proceedings fail to render adjudication of those claims unnecessary. *See England v. Louisiana State Board of Medical Examiners*, 375 U.S. 411, 421–22, 84 S.Ct. 461, 467–68, 11 L.Ed.2d 440 (1964).

According to the stipulation, a maximum of 75 (on alternate weekends, 85) participants are permitted to use the Aetna Springs facility for religious and recreational purposes. Such use is allowed on weekends only, between Friday evenings at 10:00 p.m. and Sunday evenings at 8:00 p.m. In addition, NEDS may employ 25 full-time caretakers to restore and maintain the facility. The stipulation carefully defines and limits the transportation methods to be used by NEDS in conjunction with the weekend seminars as well as the specific activities to be conducted during the seminars. The stipulation was approved by the parties and the Court on March 20, 1980.

On March 25, 1980, Napa County filed a complaint in Napa County Superior Court seeking a declaration that Napa County had properly interpreted the applicable zoning ordinance to forbid NEDS's proposed use, and that the ordinance, so interpreted, was consistent with state law. On April 30, 1982, the Superior Court filed an announcement of intended decision in favor of the County. NEDS appealed from this ruling, and the matter is currently pending in the California Court of Appeal.

Napa County has now filed in this Court a motion for "Relief from Stay." Napa requests an order "partially lifting the stay of proceedings in this action for the purpose of dissolving the interim use stipulation." The County argues that such relief is appropriate due to the Superior Court's decision in its favor. NEDS opposes this motion, and has filed a cross-motion of its own seeking modification of the stipulation to allow 100 seminar participants each weekend, 30 caretakers, and use of the facility through 10:00 p.m. on Sunday evenings.

B. *Discussion*

1. *Motion to Dissolve Interim Use Stipulation*

Whether the interim use stipulation should be dissolved depends in the first instance upon the nature of the agreement itself. While the agreement was entered with the Court's encouragement, it does not constitute an order of the Court. Rather, it is a private stipulation of the parties, and must be interpreted and enforced by reference to the rules that govern such stipulations. Under California law, the task in interpreting a compromise agreement is "to ascertain the intention of the parties, which is to be determined from the writing itself, construed in the light of the circumstances surrounding its execution, including the object, nature, and subject matter of the agreement, and the preliminary negotiations between the parties." *Shriver v. Kuchel,* 113 Cal.App.2d 421, 425, 248 P.2d 35 (1952); *see also Wo Co. v. Benjamin Franklin Corp.,* 562 F.2d 1339, 1344 (1st Cir.1977) (applying New Hampshire law).

From the language of the stipulation and the circumstances leading to its creation, it is apparent that the possibility of modification or termination of the agreement was envisioned by both NEDS and Napa County at the time the agreement was negotiated. Paragraph Three of the stipulation provides that "[t]he parties agree that either party may move this Court at any time to dissolve or modify the stipulation."

Less clear, however, is the standard the parties intended for this Court to use in determining whether modification or dissolution is appropriate. The record shows that the parties rejected suggestions that the agreement automatically expire at some fixed future date, or that it be made subject to unilateral termination by either party at fixed intervals. Instead, the parties agreed that there would be no stated termination date, but that either party could petition the Court for modification or termination at any time. From this history, plus the lack of any explicit standard in the agreement, the Court finds that the parties intended to commit any question of modification or termination to the equitable discretion of the Court.

 In exercising this discretion, the Court takes guidance from the standards of equity that would govern issuance of a

preliminary injunction in a similar situation.[1] In this circuit, a party may obtain a preliminary injunction by demonstrating either (1) a combination of probable success on the merits and the possibility of irreparable injury or (2) that serious questions are raised and the balance of hardships tips sharply in its favor. *Los Angeles Memorial Coliseum v. National Football League*, 634 F.2d 1197, 1201 (9th Cir.1980).

■ In assessing both the relative hardships that would be suffered were the stipulation dissolved and NEDS's likelihood of success on the merits, it is important to distinguish between the full use of Aetna Springs *sought* by NEDS and the use it is *permitted* by the stipulation. NEDS seeks to establish at Aetna Springs a full-time educational facility for 250 persons. Under the stipulation, however, NEDS now uses the facility only for religious and recreational purposes, and only on weekends, when it houses but 75 to 85 persons there. Only this more limited use is involved in the decision whether to terminate the interim stipulation.

The present use of Aetna Springs is primarily religious in character. The "Schedule of Weekend Seminar Activities," attached to the stipulation, reveals that each weekend seminar is predominantly devoted to religious lectures, ceremonies, and events. Should the County force NEDS to cease the seminars, NEDS would be unable to practice these religious activities in the desired manner. The allegedly unlawful injury to be suffered by NEDS as a result of such action by the County would constitute a deprivation of a right protected by the Free Exercise Clause of the First Amendment. Consequently, the "irreparable injury" prerequisite for preliminary injunctive relief is presumed to be satisfied. *See Elrod v. Burns*, 427 U.S. 347, 373, 96 S.Ct. 2673, 2689, 49 L.Ed.2d 547 (1976); *Community Communications, Inc. v. City of Boulder*, 660 F.2d 1370, 1376 (10th

Cir.1981), *cert. dismissed*, 456 U.S. 1001, 102 S.Ct. 2287, 73 L.Ed.2d 1296 (1982). Further, the County's intended action, which would deprive NEDS of any ability to use Aetna Springs for religious purposes, would impose a hardship severe in magnitude as well as irreparable.

Napa County, on the other hand, presently suffers little or no hardship from the use of Aetna Springs allowed by the stipulation. The agreement itself carefully states that NEDS will acquire no vested rights of any kind as a result of its use of the facility pursuant to the stipulation. Napa has cited no environmental, aesthetic, health, traffic, or safety problem created by NEDS's present use of the facility. NEDS's use has apparently alleviated one of Napa's chief previous concerns, that the Aetna Springs buildings failed to meet building and fire codes. NEDS caretakers have worked since entry of the stipulation to renovate and repair the Aetna Springs buildings. Napa County no longer alleges that these buildings are not in compliance with the county code or are otherwise unsafe. Based on these considerations, the Court finds that the balance of hardships tips sharply in favor of NEDS.

Napa bases its motion for dissolution of the stipulation exclusively upon the intervening Superior Court decision in its favor. In essence, Napa argues that the Superior Court decision so reduced NEDS's chances for success on the merits that the interim relief accorded in the stipulation is no longer warranted.

The state court opinion fails to support this position. For purposes of analyzing whether the stipulation should continue, the relevant question is whether NEDS could prevail on the merits of a claim that it is entitled to use the Aetna Springs property as provided in the stipulation. The state court's decision did not address this question, but rather focused almost exclusively upon NEDS proposed use of Aetna

---

**1.** In interpreting a stipulation, the agreement should, if possible, be given a meaning that avoids legal infirmity. *See National Audobon Society v. Watt*, 678 F.2d 299, 307 (D.C.Cir.

1982). By basing its decision upon the standards governing issuance of a preliminary injunction, the Court will achieve this effect.

Springs as an "educational" facility.[2] The court concluded that the Napa County zoning scheme does not permit such use. To this Court, however, it appears that the Napa County zoning ordinance would permit the present, primarily religious, use of Aetna Springs. *See* Napa Co. Code, Title XII (Zoning Ordinances), § 12701(11) (1981). The construction of the ordinance in this respect is unclear. But if the state courts should reject this interpretation, the validity of the zoning scheme would be subject to serious question because of its interference with NEDS's free exercise of religion. *See Jewish Reconstruction Synagogue v. Village of Roslyn Harbor*, 38 N.Y.2d 283, 342 N.E.2d 534, 379 N.Y.S.2d 747 (1975), *cert. denied*, 426 U.S. 950, 96 S.Ct. 3171, 49 L.Ed.2d 1187 (1976); *see also Deerfield Medical Center v. City of Deerfield Beach*, 661 F.2d 328, 336-38 (5th Cir. 1981) (denial of preliminary injunction reversed where zoning decision interfered with constitutional right to abortion). The Court finds a substantial possibility that NEDS will prevail on a claim of entitlement to use Aetna Springs in the manner permitted by the stipulation. Because the balance of hardships also tips sharply in favor of NEDS, the second part of the *Los Angeles Memorial Coliseum* test for issuance of a preliminary injunction is satisfied.[3]

The Court finds that equity supports a conclusion that the interim use stipulation should continue in effect. Napa's motion to dissolve the stipulation will be denied.

### 2. *NEDS's Motion for Modification of the Stipulation*

█ NEDS's motion to modify the stipulation is likewise subject to the equitable discretion of this Court. NEDS argues that expanded use of Aetna Springs is needed due to increased membership in the Unification Church in the San Francisco Bay area. The facts cited by NEDS may be true, although Napa complains that NEDS has failed to cooperate in Napa's attempts to investigate the facts alleged. However, the stipulation will not be modified, because the Court finds that the original agreement continues to represent a fair accommodation of NEDS's religious interests with the County's legitimate interest in regulating the use of the Aetna Springs

2. The Court listed twelve issues to be decided in the state proceeding. Of these, only one (number 8) dealt in any way with a claim by NEDS to a right to use Aetna Springs for religious purposes. This issue was whether NEDS's proposed use qualified as "quasi-public" for purposes of the zoning ordinance. However, the court also declined to pass on this claim, stating that "[NEDS] did not apply for a permit to use Aetna Springs as a church." *County of Napa v. New Education Development Systems, Inc.*, No. 41006, slip op. at 16 (Napa Co.Sup.Ct. April 30, 1982).

3. *Holy Spirit Ass'n for the Unification of World Christianity v. Town of New Castle*, 480 F.Supp. 1212 (S.D.N.Y.1979), is not to the contrary. In that case, the court refused to grant a preliminary injunction ordering a local zoning board to issue a special use permit for the operation of a "religious retreat" on a 98 acre tract of land purchased by the Unification Church in a residential zone. One of the principal reasons for denial of the injunction was that the zoning board had yet to reach a final decision on whether to issue the requested permit. The court found that the church had not demonstrated irreparable injury, because it was not then "being denied the use of or access to its property for the exercise of its religious beliefs in violation of claimed first amendment rights." *Id.* at 1215. In the present case, by contrast, the County *would* prevent NEDS from having continued access to its property for religious use if the stipulation is dissolved.

Further, the chances for NEDS to obtain a judgment on the merits that it is entitled to continue its present use of Aetna Springs are significantly greater than were the plaintiff's chances in *Holy Spirit* of obtaining a judgment that the permit scheme involved in that case was invalid. *Compare* discussion in text, *supra*, with 480 F.Supp. at 1215-17.

The final reason given by the court in *Holy Spirit* for withholding injunctive relief was its conclusion that it lacked power to enjoin state proceedings while abstaining from decision on the plaintiff's federal claims. Whether this conclusion was correct is open to question. *Cf. Friarton Estates Corp. v. City of New York*, 525 F.Supp. 1250, 1264 (S.D.N.Y.1981) (granting preliminary injunction against municipal defendants while entering order of abstention). In any event, the propriety of preliminary injunctive relief is not at issue here. This Court has not issued an injunction and does not need to issue an injunction to continue the stipulation voluntarily entered by the parties.

premises, pending adjudication of the merits of NEDS's claims. The reasons presented by NEDS do not show that the agreement now fails adequately to serve this purpose.

IT IS HEREBY ORDERED that Napa County's motion for relief from stay and dissolution of the interim use stipulation of March 20, 1980 is denied.

IT IS FURTHER HEREBY ORDERED that NEDS's cross-motion for modification of the stipulation is denied.